[No. 38325. Department One. November 3, 1966.]

LUMBER MART COMPANY, *Respondent*, v. L. L. BUCHANAN
*et al., Appellants.*\*

*Kenneth C. Hawkins*, for appellants.

*Dean C. Smith* (of *Smith & Smith*), for respondent.

\*Reported in 419 P.2d 1002.

LANGENBACH, J†—This is an action by respondent to obtain a judgment for materials furnished in construction of a building and to foreclose a materialman's lien. Appellants denied the allegations and cross-claimed for wages paid. From a judgment of foreclosure, appellants have appealed.

In July, 1962, appellants leased certain premises, containing a dance hall, for a 3-year term to one McFerran for recreational-business purposes. In September, 1962, McFerran contemplated building, at his own expense, an ice arena by remodeling and adding to the dance hall. The appellants acquiesced in this project. McFerran contracted with one Geffe for the materials and used them to construct forms in which he poured cement for the foundation. He also used some of these materials to do some remodeling on the present building.

McFerran, however, became financially unable to complete the contemplated structure. Consequently, on December 4, 1962, appellant Buchanan, and Geffe, on behalf of respondent, contracted for the erection of the new building suggested by McFerran. Buchanan testified he did not know he had contracted with respondent. The contract, however, mentioned Lumber Mart. The confusion in names was caused by Geffe selling his business about this time to respondent as a newly-formed corporation. Under this contract, respondent agreed to furnish all the materials for a completed structure for the sum of $17,628. This contract was silent as to the furnishing of any labor except that of Geffe, who was to supervise the installation of the steel-span girders at his own expense.

Throughout the construction of the proposed ice arena, McFerran ordered the materials and generally supervised the construction. As to his capacity, however, the evidence was in sharp conflict. McFerran testified Buchanan hired him at $100 a week to supervise the construction. In the meantime, his lease had been terminated and he went into

†Judge Langenbach is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

bankruptcy. After the building was erected, McFerran released the premises.

Buchanan testified he merely loaned this $100 a week to McFerran for living expenses and McFerran was not acting as his agent but as lessee. The court found that McFerran was a general agent to oversee the construction. The court did not make any findings as to McFerran as lessee or as to the trustee in bankruptcy.

In addition to the materials covered by the written contract, the respondent made six deliveries of extra materials; apparently McFerran ordered them. McFerran used some of the extra materials to construct a paint shop for his father, as a part of the ice arena. Buchanan knew that McFerran had thus constructed the paint shop. The evidence was in conflict as to whether respondent had such knowledge at the time of such deliveries. The court found that it did not have such knowledge. The rest of the extras were used in and about the ice arena premises.

In using this extra material, wages were incurred in the amount of $1,225. The laborers complained of nonpayment to the State Department of Labor and Industries. After a conference with a representative of this department, appellants paid said wages. This was the basis for the cross-claim in this action. It was the contention of appellants that respondent's manager agreed to make reimbursement, which was not done.

When appellants refused to pay for the extra materials, respondent filed its notice of claim of lien on April 24, 1963. Later this action was instituted.

During the trial, appellants made a demand for a jury trial and deposited the jury fee. The court refused to allow a jury trial at that stage of the case.

Respondent did not offer its lien until during its rebuttal. Appellants objected, among other grounds, that the description was defective. The lien described three tracts of land adjacent to the one on which the building had been erected and the materials used. The trial court, pursuant to RCW 60.04.060, allowed an amendment to the description to include the property on which the building had been con-

structed and ruled that third party interests were not prejudiced.

On appeal, appellants argued the trial court erred in not holding (1) their nonliability for the extra materials; (2) the invalidity of the lien on several grounds; (3) appellants were entitled to a jury trial; and (4) liability of respondent for the $1,225 wages paid to the laborers.

There was a decided conflict in the evidence concerning the liability for the extra materials. Appellants asserted McFerran was not their agent, or if he was, he acted outside the scope of his authority in ordering extra materials; at least, those used in connection with the paint shop.

█ As appellants argued, the rule is that agency cannot be proven by declarations of the alleged agent. See, *Ford v. United Brotherhood of Carpenters & Joiners of America*, 50 Wn.2d 832, 315 P.2d 299 (1957). Other evidence, however, substantiated the trial court's finding that McFerran was general agent to oversee the construction of the ice arena. Buchanan visited the building site on several occasions and knew what McFerran was doing. He made no complaint about his actions.

As to the extra materials, the court found in findings of fact No. 6, that "All of these materials were ordered by McFerron, were, in fact, installed in the building and were reasonably necessary to the completion of the building for its intended use as an ice arena." The evidence sustained this finding.

As to those materials used in construction of the paint shop, the court found

> [T]hat this extra work was specifically ordered by Mr. McFerron and though Buchanan may have understood that it was being done for McFerrons own benefit it clearly was not so understood by Geffe or the plaintiff [Lumber Mart] and it is again clear that the plaintiff [Lumber Mart] supplied the additional materials for the storage area at McFerrons request with no knowledge of any lack of his authority to order the additional work or materials. Finding of fact No. 8.

█ Appellants argued that respondent failed to

sustain its burden of proving agency. With this we do not agree.

> It is a general rule, . . . that a corporation may be bound by the contracts or agreements of its agent if within the apparent scope of the agent's authority, although the contract may be beyond the scope of his actual authority. [Citing cases.]
>
> It is also the well-established rule that the apparent or ostensible authority of an agent can be inferred only from acts and conduct of the principal. [Citing cases.] *Lamb v. General Associates, Inc.,* 60 Wn.2d 623, 627, 374 P2d 677 (1962).
>
> [T]he principal is bound by the act of his agent when he has placed the agent in such position that persons of ordinary prudence, reasonably conversant with business usages and customs, are thereby led to believe and assume that the agent is possessed of certain authority, and to deal with him in reliance upon such assumption. *Mohr v. Sun Life Assur. Co.,* 198 Wash. 602, 603, 89 P.2d 504 (1939).

"The authority of an agent may be implied from an established course of conduct." *Fordney v. King Cy.,* 9 Wn. 2d 546, 553, 115 P.2d 667 (1941). Although the evidence was in conflict, it substantiated that Buchanan knew extra materials were ordered for the paint shop, and yet he did not take the precaution of warning respondent that McFerran was to be solely liable therefor and there was nothing which would have put the respondent on notice.

 Although the appellants argued that the lien was invalid on several grounds, we think it necessary to consider only the ground of the trial court in amending the description of the property subject to the lien. The relevant part of RCW 60.04.060 provides that the claim of lien shall state (among other things) a description of the property to be charged with the lien sufficient for identification, and such claim of lien may be amended in case of action brought to foreclose the same, by order of the court, as pleadings may be, insofar as the interests of third parties shall not be affected by such amendment.

In *Stetson & Post Lumber Co. v. W. & J. Sloane Co.,* 61

Wash. 180, 182, 112 Pac. 248 (1910), the court in discussing this statute said:

> The rule of amendment established by this court is that amendments of this character are in the nature of amendments to pleading, and the same liberal rule as to substance and time should be followed where the interests of third parties are not injuriously affected.

In the case at bar, however, the interests of third parties may have been affected. The lessee McFerran and the trustee in bankruptcy were not made parties nor did the trial court make any findings as to their interests. With such a cloud of uncertainty, this court cannot agree with the trial court that no third party interests were affected. The trial court erred in allowing the amendment of the description in the notice of claim of lien. For this reason the lien must fail.

■ There was a decided conflict in the evidence concerning the material facts in this case. The trial court resolved this conflict in favor of respondent. On this phase the trial court is sustained. Where there is substantial evidence to support a trial court's finding, its determination on conflicting evidence is decisive. The Supreme Court cannot substitute its findings for those of the trial court, even if it is of the opinion that the factual dispute should have been resolved the other way. *Delegan v. White*, 59 Wn.2d 510, 368 P.2d 682 (1962).

■ Appellants argued that, since the lien was invalid, they were entitled to a jury trial. It suffices to say that their demand for a jury trial and deposit of the necessary fee occurred after the start of the trial. Thus they waived their right of trial by jury. *Miller v. Cascade Canning Co.*, 173 Wash. 211, 22 P.2d 657 (1933).

Appellants argued that the court erred in denying their relief for their counterclaim of $1,225. They contended this amount thus paid was an advance to respondent on the contract, which respondent agreed to repay. The trial court, however, found

> [T]he labor performed which resulted in this claim was done on matters which were extras and which were out-

side of the original contract between plaintiff and defendants and related to items for which the plaintiff had no obligation to perform labor. Any contracts that Geffe had with workmen was a matter of accommodation to McFerron and Buchanan only and for purpose of expediting the work. The work performed by these workmen was specifically ordered by McFerron and all of the work that was done went towards the improvement of the building and was necessary to the completion of the building for its intended use as an ice arena. Finding of fact No. 9.

The evidence fully substantiated this finding. *Delegan v. White, supra.*

The judgment as to the personal liability of appellants is affirmed. The judgment as to the validity of the lien is reversed which eliminates all allowances for attorney's fees. Appellants are allowed their costs on appeal. It is so ordered.

ROSELLINI, C. J., OTT, HUNTER, and HALE, JJ., concur.

January 25, 1967. Petition for rehearing denied.